IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. LEON, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | No.: 09-CV-3872 |
| v. | : | |
| | : | |
| | : | |
| KIDSPEACE CORPORATION d/b/a | : | |
| KIDSPEACE CHILDREN'S HOSPITAL | ,: | |
| ROBERT BREINER and | : | |
| SCOTT BAER | : | |
|     Defendants. | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

I.  STANDARD OF REVIEW

Defendants, predictably, cite to *Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2007) arguing that these cases now require dismissal of the Amended Complaint.

However, although *Twombly* and *Iqbal* tightened up pleading standards, Defendants would stretch those holdings beyond their scope, to the point that they require specific evidentiary facts to be plead. That is not what *Twombly* and *Iqbal* (and their progeny) hold. The requirement of these cases is that the allegations in a complaint are not:

    a. Mere labels or conclusions; and/or

    b. Mere recitations of the elements of the causes of action; so that

    c. The complaint is not pure speculation.

In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true,

and draw all reasonable inferences in favor of the plaintiff. *Id.*; see also *D.P. Enters. v. Bucks County Cmty. Coll.*, 725 F.2d 943, 944 (3rd Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. *Conley*, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.* The "complaint must allege facts suggestive of [the proscribed] conduct." *Twombly*, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3rd Cir. 1997); *Sterling v. Southeastern Pennsylvania Transp. Auth.*, 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3rd Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Defendants appear to believe that the combination of *Twombly* and *Iqbal* has raised the bar of Federal pleading to a common law fact pleading standard. Nowhere has the Supreme Court altered the provisions of Rule 8, nor has it retreated from the holding in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) that the Plaintiff is not required to plead all of the elements of the case. In fact, the actual effect of *Twombly* is the converse of *Sorema* – while one need not plead the elements (*Sorema*), just pleading the elements is not enough (*Twombly*). *Iqbal* adds the consideration that the Plaintiff cannot simply aver "information and belief" and then rely upon discovery to fill in the blanks. Therefore, the question endorsed by *Iqbal/Twombly* is whether the complaint sets forth a plausible claim.

The Defendants carry the burden of establishing that no claim has been presented. *Kehr Packages v. Fidelcor, Inc.*, 926 F2d 1406, 1409 (3rd Cir. 1991). When evaluating 12(b)(6) motions, the court must accept all allegations in the complaint as true, construing all reasonable inferences that can be drawn from those allegations in favor of the plaintiff. *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3rd Cir. 1984); *McKnight v. Southeastern Pennsylvania Transp. Auth.*, 583 F.2d 1229, 1235-36 (3rd Cir. 1978); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3rd Cir. 1991); *Shaver v. Hiebert Corporation*, 936 F. Supp. 313, 315 (E.D. Pa. 1996).

## II. ARGUMENT

### 1. The ADA and PHRA Counts

As to these Counts, which are read <u>in pari materia</u>, Defendants argue that the Amended Complaint does not identify the Plaintiff's disability and the major life functions affected.

To the contrary, however, the Amended Complaint states:

> (¶ 27)   From the beginning of his employment with Defendant, Plaintiff disclosed to them that he had been diagnosed with severe depression and bi-polar disorder, and was treating for same.
>
> (¶ 29)   The condition is one which substantially limits several major life activities, including,     but not limited to, thinking, concentrating, sleeping, hygiene and interacting with other people.

The foregoing averments set forth the widely accepted ADA disability of severe depression as well as the major life functions affected.

Secondly, in their attack on the ADA/PHRA counts, Defendants argue that Plaintiff has not set forth facts related to the accommodation requests; when they were made; and any facts related to Defendants' failure to engage in the ADA's interactive process. Defendants' arguments are incorrect in that Plaintiff has averred the following:

> (¶ 27)   From the beginning of his employment with Defendant, Plaintiff disclosed to them that he had been diagnosed with severe depression and bi-polar disorder, and was treating for same.
>
> (¶ 28) Human Relations met with Plaintiff upon his hire and questioned him about his disclosed disabilities.
>
> (¶ 32)   Plaintiff between October 2007 and the date of his termination, December 11, 2007, took sick days which were protected both under the ADA, as leave accommodation and under the FMLA.
>
>  (¶ 33)   Specifically and without limitation, Plaintiff took sick days in October and November of 2007 as a result of the serious medical condition of bronchitis, pneumonia severe cough and vomiting.  Said leave required multiple doctor's visits and Plaintiff was incapacitated for more than three (3) days as a result of same.
>
>  (¶ 34)   When Plaintiff returned to work, he was given a warning.
>
> (¶ 35) On November 19, 2007, Plaintiff took medical leave for severe depression and bi-polar disorder which the

medical leave lasted between November 19, 2007 until November 23, 2007.

(¶ 36) Both on November 19, 2007 and subsequently before his termination, Plaintiff and his wife specifically advised Defendants Breiner and Baer that Plaintiff was suffering from severe depression and bi-polar disorder and that his leave was related to said disorder. Plaintiff's wife, Donna Leon (hereinafter "Donna Leon") spoke with Defendant Breiner by telephone and told him about Plaintiff's symptoms.

(¶ 37) When Plaintiff returned to work, he was given another warning.

(¶ 38) When Plaintiff returned to work, he was summoned to Human Relations. On that day, Plaintiff requested additional leave as a reasonable accommodation of his disabling condition, based upon the advice of his treating physician.

(¶ 39) Plaintiff offered a medical certification in support of his request.

(¶ 40) On December 3, 2007, Plaintiff was ill from his medical condition and called in sick. Plaintiff told Defendant Breiner of his symptoms.

(¶ 41) Plaintiff also told Defendant Breiner that he had his doctor's note for his requested medical leave.

As indicated above, Plaintiff had a disability, gave notice of such disability and requested accommodation in the form of leave. No talismanic words are required in asking for accommodation. The employee need not even mention the ADA or even the word "accommodation". *Corbett v. National Producers*, Lexis 3949, (E.D. Pa. 1995). Moreover, there can be no doubt that Plaintiff requested leave and/or additional leave as an accommodation under the ADA. Numerous courts have stated that leave for medical treatment is a reasonable accommodation under the ADA. *See Shannon v. City of Philadelphia*, Lexis 18089 (E.D. Pa. 1995); *Basith v. Cook County*, 241 F. 3d 919 (7th Cir. 2001); *Corbett v. Supra. See also EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA*, October 17, 2002.

Plaintiff asked for leave and was denied. Plaintiff clearly and repeatedly requested accommodation in the form of leave; communicated his disability and symptoms; explained why he needed medical leave; and referred to the advice of his physicians and offered to produce medical records. In response to this, Defendants' terminated him. What Defendants were obligated to do was engage in the interactive process.

In *School Board of Nassau County v. Arline* 480 U.S. 273 (1987), the Supreme Court recognized that a fact-specific "individualized inquiry" is required in determining whether a disabled individual is "qualified" for a particular job. Stressing the ADA's purpose, the Supreme Court noted: "Such an inquiry is essential if § 504 is to achieve its goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear…" *See also Holiday v. City of Chattanooga* 206 F.3d 637 (6th Cir. 2000); *EEOC v. Prevo's Family Market, Inc.* 135 F.3d 1089 (6th Cir 1998) (need for individualized, case-by-case analysis of the employee's disability and specific essential job functions). "Both parties

have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith… It logically follows, therefore, that the party who fails to communicate or engage in a dialogue with the other party is not acting in good faith". *Mengine v. Runyon*, 114 F.3d 415 (3rd Cir. 1997); *Taylor v. Phoenixville*, 185 F.3d 296 (3rd Cir. 1999) ("It may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.")

In *Shapiro v. Township of Lakewood*, 292 F.3d 356 (3rd Cir. 2002), the Court noted that the 3rd Circuit has "endorsed" the concept of the interactive process and noted:

> **The ADA itself does not refer to the "interactive process." The ADA provision upon which Shapiro's claim is based requires an employer to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless[the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" 42 U.S.C. § 12112(b)(5)(A). A regulation issued pursuant to the ADA, however, states that, "to determine the appropriate reasonable accommodation it may be necessary for [the employer] to initiate an informal, interactive process with [the employee] in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).**
>
> **In *Mengine*, we endorsed the concept of the "interactive process" and explained:**
> **When the interactive process works well, it furthers the purposes of the Rehabilitation Act and the ADA.**
>  . . .
> **We observed that an employer that fails to engage in the "interactive process" runs a substantial risk: "if an employer fails to engage in the interactive process, it may not discover a way in which the employee's disability could have been reasonably accommodated, thereby risking violation of the Rehabilitation Act." Id. at 420-21; see also *Deane v. Pocono Medical Center, 142 F.3d 138, 149 (3d Cir. 1998)* (en banc).**

*See also Hohider v. UPS*, 574 F.3d 163 (3rd Cir. 2009) (employer is required to engage in a good faith interactive process; and must make a good faith effort to assist the employee in seeking accommodation). "An employer who fails to engage in the interactive process

runs a serious risk that it will erroneously overlook an opportunity to accommodate a statutorily disabled employee, and thereby violate the ADA". *Deane v. Pocono Med.*, 142 F.3d 138 (3rd Cir. 1998). (*Hohider, supra* also discusses the illegality of "100% healed" before return to work policies, if the employer applies such a policy without the interactive process and "individualized assessment".)

Accordingly, Plaintiff has set forth that Defendants failed to engage in the interactive process. There simply is no evidence of facts known to Plaintiff regarding even an attempt by Defendants to engage in the interactive process. Plaintiff was simply fired. He was not invited or allowed by Defendants to participate in any good faith, fact-specific interactive process focusing on the discovery of reasonable accommodation, including to determine or explain why his required leave was "unduly burdensome". Plaintiff has alleged further, that his leave would not constitute "undue burden."

> (¶ 43) **The aforementioned requested accommodation of additional leave would not have imposed an undue hardship on Defendant.**

Accordingly, Plaintiff has stated a claim of discrimination which includes failure to accommodate under the ADA and PHRA. As to retaliation, Plaintiff has asserted that he was terminated after requesting accommodation in the form of leave. He has alleged that he was repeatedly "warned" and threatened in response to his leave requests. Ultimately, he was terminated, instead of being given the required leave or, at least, being invited to participate in a good faith interactive process- pursuant to which the Defendants could potentially identify any "unduly burdensome" issues or other reasonable accommodation.

### 2. The FMLA Counts

As Defendants recognize in their Brief, an FMLA interference claim requires a Plaintiff to show that:

1. He is eligible under the FMLA;
2. The employer was subject to the FMLA;
3. He was eligible for leave under the FMLA;
4. He gave notice of his intent to take FMLA leave; and
5. He was denied such leave.

Plaintiff has alleged that KidsPeace is subject to the FMLA, in terms of its number of employees- and this is not denied. Plaintiff has alleged that he had been employed with Defendant for more than one (1) year (Amended Complaint ¶ 20); and that he had not exceeded more than 12 weeks leave in his last year of employment (Amended Complaint ¶ 31).

Plaintiff has further alleged that he had at least two (2) serious medical conditions and described them (Amended Complaint ¶ 27, 33). Plaintiff clearly has asserted both that he took FMLA qualified leave and requested additional FMLA qualified leave (Amended Complaint ¶ 32, 33, 35, 36, 38, 40). Finally, shortly following such qualified leave, and/or in response to requests for additional qualified leave, he was terminated (Amended Complaint ¶ 42).

Plaintiff, therefore, has set forth, a "more than just speculative" case under the FMLA.

3. **THE PHRA AIDING AND ABETTING COUNTS**

<u>**Plaintiff has properly set forth a claim for aiding and abetting under the PHRA, against the individual Defendants**</u>

Section § 955 of the Pennsylvania Human Relations Act, 42 Pa.C.S.A. § 955, expressly extends the coverage of the Act beyond employers.  It defines as prohibited:

> **(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.**
>
> **(e) For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.**

42 Pa.C.S.A. § 955(d)-(e).  A "person" is defined in § 954 as including:

> **One or more individuals, partnerships, associations, organizations, corporations, legal representatives, trustees in bankruptcy or receivers. It also includes, but is not limited to, any owner, lessor, assignor, builder, manager, broker, salesman, agent, employee, independent contractor, lending institution and the Commonwealth of Pennsylvania, and all political subdivisions, authorities, boards and commissions thereof.**

The individual Defendants, Breiner and Baer are specifically named as aiding and abetting supervisors in the EEOC Charge.

First, the PHRA does not require proof that an individual defendant was a direct supervisor. Rather, it requires that he or she be a "supervisory employee." *See Sheridan v.*

*E.I. Dupont de Nemours and Co.,* 100 F.3d 1061 (3rd Cir. 1996); *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3rd Cir. 1996); *Frye v. Robinson Alarm Co.,* 1998 U.S. Dist. LEXIS 1331, 1998 WL 57519, *3 (E.D. Pa. 1998); *Smith v. Pathmark Stores, Inc.,* 1998 U.S. Dist. LEXIS 8631, 1998 WL 309916, *3 (E.D. Pa. 1998). This Court has already acknowledged that the person who notifies an employee of her termination may be liable under the PHRA. *Kaniuka v. Good Shepherd Home*, 2005 U.S. Dist. LEXIS 26963, *13, n.4 (E.D. Pa. 2005) *citing Atkinson v. Lafayette College*, 2002 U.S. Dist. LEXIS 1432, No. CIV. A. 01-CV-2141, 2002 WL 123449, at *4 (E.D. Pa. Jan. 29, 2002). Breiner and Baer consulted each other and jointly chose 1) not to offer any ADA rights to Plaintiff; 2) Not to engage in the interactive process with Plaintiff 3) Not to offer reasonable accommodation to Plaintiff; and 4) To terminate Plaintiff.

Accordingly, Plaintiff has set forth a cause of action for aiding and abetting against Breiner and Baer.

                         **HAHALIS & KOUNOUPIS, P.C.**

                         _gsk5697_
                         George S. Kounoupis, Esquire
                         20 East Broad Street
                         Bethlehem, PA  18018
                         (610) 865-2608
                         Attorneys for Plaintiff

Date:  _December 11, 2009_